IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:16-CT-3109-FL

| | | |
|---|---|---|
| WILLIE JAMES DEAN, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| JOHNNIE JONES and CHARLES C. HOBGOOD, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on defendants' motion for summary judgment (DE 61), filed pursuant to Federal Rule of Civil Procedure 56. The motion was fully briefed. In this posture, the issues raised are ripe for decision. For the reasons stated below, the motion is granted.

## STATEMENT OF THE CASE

On May 6, 2016, plaintiff, a state inmate proceeding pro se, filed this civil rights action pursuant to 42 U.S.C. § 1983, alleging defendants used excessive force against him in violation of the Eighth Amendment. Plaintiff subsequently filed amended complaint particularizing his allegations. On November 15, 2016, the court conducted a frivolity review of plaintiff's amended complaint, and allowed the matter to proceed as to defendants Jones and Hobgood, but dismissed plaintiff's claims against formerly-named defendants Solomon, Joyner, and Waddell. On April 20, 2017, the court entered case management order governing discovery and dispositive motions practice. After entry of the case management order, plaintiff filed the following motions: 1) for leave to amend complaint; 2) for status conference, 3) for extension of time to complete discovery;

4) for jury trial; 5) to compel; 6) two motions to appoint counsel; and 7) for default judgment. On June 22, 2017, the court granted plaintiff's motion for leave to amend complaint. Plaintiff's amended complaint clarified the factual allegations at issue, but did not allege any new claims or add new defendants. On January 23, 2018, defendants filed the instant motion for summary judgment, which was fully briefed. On February 23, 2018, the court granted in part and denied in part plaintiff's motions to compel and to for extension of time to complete discovery, and denied plaintiff's remaining motions. The February 23, 2018, order reopened discovery for the limited purpose of permitting defendants to supplement certain responses to plaintiff's discovery requests, and also granted plaintiff leave to file supplemental response to defendants' pending motion for summary judgment.

Defendants' instant motion for summary judgment argues the record evidence establishes defendants did not use excessive force during the subject altercations with plaintiff, and thus they are entitled to judgment as a matter of law on plaintiff's Eighth Amendment claims. In support of the motion, defendants filed statement of material facts and appendix, which included personal affidavits of defendants Jones and Hobgood, incident reports, use of force policies, personal affidavit of William Elderdice, and copies of the video recordings of one of the altercations. Plaintiff responded to the motion, and also filed statement of material facts and appendix. Plaintiff's appendix includes certain of defendants' discovery responses, incident reports, use of force policies, copies of plaintiff's grievances, witness statements obtained during the internal Department of Pubic Safety ("DPS") investigation, plaintiff's medical records, pictures of plaintiff following the altercations and of the DPS facilities in which the altercations took place, and other miscellaneous documents. Plaintiff did not file supplemental response to defendants' motion for summary

2

judgment, despite the court granting him leave to do so in the February 23, 2018, order.

## STATEMENT OF FACTS

As defendants have moved for summary judgment, the court generally recounts the facts in the light most favorable to plaintiff. Because defendants have produced a video recording of one of the altercations, however, the court relies on the recording to the extent it directly contradicts plaintiff's version of events. Scott v. Harris, 550 U.S. 372, 380-81 (2007).

During the relevant time frame, plaintiff was in DPS custody at Central Prison located in Raleigh, North Carolina. (Pl.'s Stmt. of Material Facts ("Pl.'s SOMF") (DE 71) ¶ 1). On December 12, 2015, defendant Hobgood was escorting plaintiff from the barbershop back to plaintiff's cell. (Id. ¶ 2). During the escort, plaintiff "head-butted" defendant Hobgood, causing both plaintiff and Hobgood to fall to the ground. (Id. ¶¶ 4-6). Correctional officer Gipson then subdued plaintiff by holding plaintiff's knees to his chest. (Id. ¶ 6). According to plaintiff, "[defendant] Hobgood got to his feet, and although [plaintiff] was subdued and still handcuffed with c/o Gipson's weight on his chest and could offer minimal resistance, [defendant Hobgood] administered one long burst [of pepper spray] to [plaintiff's] face, lasting over 3 seconds." (Id. ¶ 7). Defendants could not produce a video recording of this incident, due to technical issues with the recording system. (See id. ¶ 11). Defendant Hobgood had no further contact with plaintiff that day. (Id. ¶ 14).

An emergency code was called during the foregoing incident, and numerous officers responded. (See id. ¶ 12). Plaintiff stopped resisting, and defendant Jones, officer Rivera, and other officers escorted plaintiff to the decontamination room to wash off the pepper spray. (Id. ¶ 15; Jones Aff. (DE 64-1) ¶ 7). Plaintiff's hands were handcuffed behind his back, but he was not in leg

restraints. (Defs' Ex. C (DE 64-3) Camera 149[1] at 11:25:38). Plaintiff alleges that during the escort he was "maliciously slammed into the slider doors," and the video recording confirms that plaintiff was pushed against the door while officers attempted to open it. (Pl.'s SOMF (DE 71) ¶ 15; Defs' Ex. C (DE 64-3) Camera 149 at 11:25:12 to 11:25:20). The video then shows plaintiff escorted without incident through a hallway for approximately twenty seconds. (Id. Camera 149 at 11:25:38 to 11:25:55).

According to plaintiff, as a result of being "slammed" into the slider doors, he began to fear for his well-being. (Pl.'s SOMF (DE 71) ¶ 16). Plaintiff then head-butted defendant Jones, who was holding his wrist "severely." (Id. ¶ 18; Defs' Ex. C (DE 64-3) Camera 144 at 11:25:56). Plaintiff was immediately pushed against the wall by numerous officers, out of view of the video camera. (Pl.'s SOMF (DE 71) ¶ 20; Defs' Ex. C (DE 64-3) Camera 144 at 11:25:57 to 11:26:02). Plaintiff testified that he "stopped resisting" when he was pushed against the wall. (Pl.'s SOMF (DE 71) ¶ 20). Defendant Jones and other officers then pushed plaintiff into a janitor's closet. (Id. ¶¶ 22, 26). For approximately one minute while plaintiff was in the janitor's closet (and off camera), defendant Jones and other officers allegedly assaulted plaintiff by kicking and punching him, all while plaintiff was not resisting. Plaintiff, however, admits that his legs were free immediately after he was pushed into the closet and he "tried to curl up to protect himself." (Id. ¶ 26). Sergeant Rivera (who is not a defendant), then yanked plaintiff out of the closet and subsequently released his grip on plaintiff, causing plaintiff to drop to the floor. (Defs' Ex. C (DE 64-3) Camera 144 at 11:27:05 to 11:27:14).

As a result of the second incident, plaintiff sustained various injuries, including fractured left

---

[1] The compact disc produced by defendants labels the relevant camera views with a "C" followed by the camera number, but for clarity the court uses "Camera 149."

nasal cavity, deep laceration on his forehead, and his left eye was swollen shut with protruding bloody discharge. (Pl.'s Resp. Memo. (DE 70) at 17). Plaintiff also suffered various bruises and other minor injuries. (Id.) An X-ray revealed that a cyst developed along plaintiff's nasal fracture, which required surgical removal. (Id.)

## DISCUSSION

A.  Standard of Review

Summary judgment is appropriate when there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the burden of initially coming forward and demonstrating an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party "may not rest upon the mere allegations or denials of his pleading" but "must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 248-49; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The nonmoving party thus "bears the burden of showing, by means of affidavits or other verified evidence, that [a] genuine dispute of material fact exists." Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 522 (4th Cir. 2003). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 250.

B.  Analysis

Defendants assert they are entitled to qualified immunity to the extent plaintiff seeks monetary damages. Government officials are entitled to qualified immunity from civil damages so

5

long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In other words, a government official is entitled to qualified immunity when 1) the plaintiff has not demonstrated a violation of a constitutional right, or 2) the court concludes that the right at issue was not clearly established at the time of the official's alleged misconduct. Pearson v. Callahan, 555 U.S. 223, 236 (2009). Here, the first inquiry is dispositive.

Plaintiff alleges defendants used excessive force against him in violation of the Eighth Amendment. The Eighth Amendment prohibits the "unnecessary and wanton infliction of pain" which constitutes cruel and unusual punishment. Whitley v. Albers, 475 U.S. 312, 319 (1986). The excessive force inquiry has an objective prong and a subjective prong. Under the objective prong, a plaintiff must establish that the forced used was "nontrivial." Wilkins v. Gaddy, 559 U.S. 34, 39 (2010). "An injury is sufficiently serious for purposes of the objective component of an Eighth Amendment excessive force claim as long as it rises above the level of de minimus harm." Iko v. Shreve, 535 F.3d 225, 238 (4th Cir. 2008); see also Hudson v. McMillian, 503 U.S. 1, 9-10 (1992).

To satisfy the subjective component, a claimant must show that a prison official acted with a "sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 297 (1991). For an excessive force claim, the relevant state of mind is "wantonness in the infliction of pain." Whitley, 475 U.S. at 322. Although "[a]n express intent to inflict unnecessary pain is not required" to establish an excessive force claim under the Eighth Amendment, an inmate must show that the defendant inflicted unnecessary and wanton pain and suffering. Id. at 319. In determining whether a prison official has acted with "wantonness," relevant factors include: 1) the need for the application of force; 2) the relationship between the need and the amount of force used; 3) the threat

6

reasonably perceived by the responsible officials; and 4) any efforts made to temper the severity of a forceful response. Whitley, 475 U.S. at 321; Hudson, 503 U.S. at 7.

   2.   Defendant Hobgood

As set forth above, plaintiff alleges defendant Hobgood administered a single burst of pepper spray lasting approximately three seconds after plaintiff head butted him. The court easily concludes this use of force did not violate the Eighth Amendment. The use of force was clearly necessary, as it was deployed almost immediately after plaintiff assaulted defendant Hobgood and at a time when defendant Hobgood reasonably feared for his own and officer Gipson's safety. See Grayson v. Peed, 195 F.3d 692, 696 (4th Cir. 1999) (holding use of pepper spray was not excessive where officers reasonably perceived inmate posed a danger to officers). And a single, three-second burst of pepper spray is obviously a proportionate response, given the safety risk plaintiff posed. See id. While defendant Hobgood does not appear to have made efforts to temper the severity of the response, the remaining Whitley factors as outlined above clearly weigh in favor of defendant Hobgood.

Plaintiff emphasizes that officer Gipson was holding plaintiff's knees to his chest and he was not resisting the officers at the time defendant Hobgood deployed the pepper spray. (Pl.'s SOMF ¶¶ 6-7). Plaintiff downplays the safety risk he posed in these circumstances. As noted, plaintiff head butted defendant Hobgood, who then deployed the pepper spray in the immediate aftermath of the incident, when he reasonably still feared for his and officer Gipson's safety. Plaintiff legs were also not restrained, and officer Gipson was the sole officer "subduing" plaintiff by holding his unrestrained legs to his chest. In these circumstances, the fact that plaintiff was not resisting at the moment defendant Hobgood deployed the pepper spray does not make the use of force excessive, particularly where the officers reasonably believed he still posed a threat to them. See, e.g., Graham

7

v. Connor, 490 U.S. 386, 396-97 (1989) (explaining that "police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation" and courts must take that circumstance into account when considering whether a constitutional violation occurred); Grayson, 195 F.3d at 696 ("In dealing with such agitated detainees prison officials must not be forced to walk a tightrope and face the prospect of a lawsuit [for either excessive force or failing to protect an inmate from harming himself] no matter which way they turn").

Finally, the court also notes plaintiff has not provided admissible evidence establishing that he was injured by the pepper spray. The injuries plaintiff alleges he sustained all appear related to the second use of force incident. (See Resp. Mem. (DE 70) at 17). To establish the objective component of an Eighth Amendment excessive force claim, plaintiff must show that his injuries rise above the level of de minimus harm. Hudson, 503 U.S. at 9-10; Iko, 535 F.3d at 238.

Based on the foregoing, defendant Hobgood is entitled to qualified immunity because plaintiff has not established deployment of the pepper spray was excessive under the circumstances.

2. Defendant Jones

Plaintiff alleges defendant Jones and several non-party officers kicked, punched, and possibly hit plaintiff with a baton[2] after defendant Jones pushed him into the janitor's closet. Much of the analysis set forth above with respect to defendant Hobgood also applies to defendant Jones. Defendant Jones applied force immediately after plaintiff head butted him, at a time when he and the other officers reasonably feared for their safety. Plaintiff also assaulted defendant Jones shortly after defendant Hobgood had deployed pepper spray, so the officers reasonably believed that pepper

---

[2]Plaintiff states that he is not certain whether a baton was used during this incident. (Pl.'s SOMF (DE 71) ¶ 27).

8

spray would not be effective.[3]  Thus, there was a clear need for the application of force, the officers reasonably feared for their safety, and prior, less intrusive uses of force had not been successful. The first, second, and fourth Whitley factors therefore weigh in favor of defendant Jones.  Whitley, 475 U.S. at 321.

As to the second Whitley factor, plaintiff argues the amount of force used was not proportionate to the need because he stopped resisting after he head butted defendant Jones.  The video recording shows plaintiff was "pushed"[4] into the janitor's closet almost immediately after he head butted defendant Jones.  (Defs' Ex. C (DE 64-3) Camera 144 at 11:25:56 to 11:26:02).  Thus, even if plaintiff stopped resisting after he head butted defendant Jones, the officers were justified in using additional force immediately after the incident to ensure the significant threat plaintiff posed to officer safety was contained.  As noted, the court does not evaluate defendant Jones's conduct in a vacuum, ignoring that plaintiff had just head butted him and posed an imminent risk to officer safety.  See Graham, 490 U.S. at 396-97; Grayson, 195 F.3d at 696-97 ("If we failed to accord due deference to the officers' efforts [to restrain a combative prisoner], we would give encouragement to insubordination in an environment that is already volatile enough.").  At the time defendant Jones applied force, plaintiff had head butted two officers, and failed to comply even after defendant Hobgood deployed pepper spray.  The officers also removed plaintiff from the janitor's closet approximately one minute after the incident began, which does not suggest defendants used a disproportionate amount of force under the circumstances.  See Grayson, 195 F.3d at 694, 696

---

[3] Defendant Jones and the other officers involved in the second altercation were aware of defendant Hobgood's use of pepper spray because they were the responding officers to that incident.  (See Pl.'s SOMF ¶¶ 12-13, 15).

[4] Defendants argue plaintiff fell into the janitor's closet during the struggle, but the court adopts plaintiff's version for purposes of ruling on the instant motion.  The video recording also does not clearly contradict plaintiff's account.

(holding officers did not violate Eight Amendment when five-man cell extraction team pinned plaintiff down and punched plaintiff seven to nine times where inmate posed immediate threat to officer safety).

Moreover, while plaintiff alleges in conclusory fashion that he was not resisting at the time defendant Jones applied force, he also admits that his legs were not restrained, and that he was trying to curl his legs up to "protect" himself after he fell into the janitor's closet. (Pl.'s SOMF (DE 71) ¶ 26). In light of plaintiff's prior conduct, the officers reasonably could have interpreted plaintiff's actions as attempts to kick them after he was on the floor, which further justifies the use of force in these circumstances. See Whitley, 475 U.S. at 321; Grayson, 195 F.3d at 696-97 (holding continued resistance justifies additional use of force).

Finally, to the extent plaintiff alleges defendant Jones used excessive force by pushing him into the door, plaintiff is not entitled to relief. The video recording of this incident establishes that no reasonable jury could find the push into the door was excessive or that defendant Jones otherwise inflicted unnecessary and wanton pain and suffering. Scott, 550 U.S. at 380-81 ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."). The video recording, for example, makes clear plaintiff was inadvertently pushed into the door as defendants attempted to unlock it in the midst of escorting an agitated prisoner who had just assaulted another corrections officer. (Defs' Ex. C (DE 64-3) Camera 149 at 11:25:12 to 11:25:20). The Whitley factors all favor defendant Jones in these circumstances. Whitley, 475 U.S. at 321; see also Hudson, 503 U.S. at 9 ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's

constitutional rights.").

Defendant Jones is therefore entitled to qualified immunity[5] because plaintiff has not established he used excessive force in violation of the Eighth Amendment.

**CONCLUSION**

Based on the foregoing, defendants' motion for summary judgment (DE 61) is GRANTED, and plaintiff's claims are dismissed with prejudice. The clerk of court is DIRECTED to close this case.

SO ORDERED, this the 27th day of September, 2018.

_____
LOUISE W. FLANAGAN
United States District Judge

---

[5]Plaintiff also is not entitled to injunctive or declaratory relief because has not established a violation of his constitutional rights. See Christopher Phelps & Assocs., LLC v. Galloway, 492 F.3d 532, 543 (4th Cir. 2007) (describing standard for obtaining permanent injunction).